

**SO ORDERED.**

**SIGNED this 21st day of March, 2012.**

Dale L. Somers
United States Bankruptcy Judge

---

**For on-line use and print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re: | |
| **BROOKE CORPORATION, et al.,** | **CASE NO. 08-22786** |
| | **(jointly administered)** |
| Debtors. | **CHAPTER 7** |
| **CHRISTOPHER J. REDMOND,** Chapter 7 Trustee of Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc., | |
| Plaintiff, | |
| v. | **ADV. NO. 10-6246** |
| **KUTAK ROCK, LLP, et al.,** | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**KUTAK ROCK'S MOTION TO DISMISS STATE LAW CLAIMS**

The Court has under advisement the "Motion of Defendant Kutak Rock LLP to Dismiss the State Law Claims (Counts VI-IX) for Failure to State a Claim upon which Relief May Be Granted" (Motion).[1]  The First Amended Complaint (Complaint),[2] filed by Plaintiff Christopher J. Redmond,[3] the Chapter 7 Trustee for Debtors Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc., alleges common law causes of action against Kutak Rock, LLP (Kutak), for malpractice, aiding and abetting breach of fiduciary duty, breach of fiduciary duty, and deepening insolvency.  These claims arise out of Debtors' retention of Kutak as legal counsel for Brooke Corporation and Brooke Capital, commencing as early as 2004 and continuing until 2008.  The Trustee opposes the Motion.

After considering the briefs and hearing the arguments of counsel, the Court holds the Complaint states claims on which relief can be granted against Kutak in Count VI (negligence) and Count VII (aiding and abetting breach of fiduciary duty).  The Court also holds the Complaint fails to state claims on which relief can be granted in Count VIII (breach of fiduciary duty) and Count IX (deepening insolvency).  The doctrine of *in pari delicto* is rejected as a basis to dismiss the state law claims.

---

[1] Dkt. 178; the supporting brief is Dkt. 179.  Kutak Rock, LLP, appears by John C. Aisenbrey and Justin L. Martin of Stinson Morrison Hecker LLP.

[2] Dkt. 67.

[3] The Trustee appears by Benjamin F. Mann, Michael E. Norton, John J. Cruciani, and Michael D. Fielding of Husch Blackwell LLP.

2

**APPLICABLE STANDARD.**

Kutak moves to dismiss the state law claims against it under Bankruptcy Rule 7012(b), which incorporates Civil Rule 12(b)(6) and provides for dismissal if the complaint fails to state a claim upon which relief can be granted. Kutak contends the allegations fail to satisfy the standard adopted by the Supreme Court in *Twombly*[4] and *Iqbal*.[5] Under that standard, the Motion tests the legal sufficiency of the allegations — whether they are "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Bankruptcy Rule 7008(a), which incorporates Civil Rule 8(a)(2). Satisfaction of this standard gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[6] Further, to withstand a motion to dismiss, a complaint must contain enough allegations of fact, "accepted as true, 'to state a claim to relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

**THE GENERAL ALLEGATIONS OF THE COMPLAINT.**

The Complaint seeks redress from multiple parties for the economic collapse of

---

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[6] *Twombly* at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[7] *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570).

[8] *Id.*, 556 U.S. at ___, 129 S.Ct. at 1949.

3

Debtors.  Defendant Kutak was retained as Brooke's legal counsel and is sued for malpractice, deepening insolvency, and other state law claims, as well as causes of action under the Bankruptcy Code.  Brooke Corporation's directors are sued for improper payment of dividends, breach of fiduciary duty, and deepening insolvency.  Negligence and deepening insolvency claims are alleged against the underwriters.[9]  Although claims against Kutak are asserted under both state law and the Bankruptcy Code, the Motion, and therefore this Memorandum Opinion and Order, is concerned only with the state law claims against Kutak.

The Complaint alleges the following background facts.  Debtor Brooke Corporation (Brooke Corp.), a holding company listed on the NASDAQ Global Market, was a Kansas corporation, headquartered in Kansas.  Brooke Corp. owned 81% of Brooke Capital, also a Kansas corporation headquartered in Kansas.  Brooke Capital was an insurance agency and finance company that distributed services through a network of franchises and company-owned businesses.  It was a publicly-traded company that was listed on the American Stock Exchange.  Brooke Capital owned 100% of the stock of Debtor Brooke Investments.  Brooke Corp. and Brooke Capital are referred to collectively in the Complaint and in this opinion as "Brooke."[10]

---

[9] The defendant underwriters' motion to dismiss for failure to state claims on which relief can be granted was the subject of a separate memorandum opinion and order filed on February 2, 2012.  (Dkt. 223).  The Court held that the Complaint failed to state a claim on which relief can be granted against the underwriters, but granted the Trustee 28 days to file an amended complaint asserting a negligence cause of action against them.

[10] The Complaint frequently fails to distinguish between Brooke Corp. and Brooke Capital, even as to such matters as financial statements and stock offerings.  Kutak has not objected to this failure, and

Brooke and approximately thirty other affiliated companies were engaged primarily in the business of selling insurance and related services through franchisees. Each franchisee agreed to pay Brooke fees, including an Initial Franchise Fee and buyer assistance fees, and to share a percentage of its sales commissions with Brooke. In return, Brooke agreed to provide ongoing services to each franchisee. The costs of acquisition of agencies and franchises were typically financed through Brooke's lending subsidiary. Between 2004 and 2007, Brooke experienced tremendous growth in the number of franchisees. Brooke's payroll and other operating expenses increased very quickly. In many instances, the commission revenues of the franchisees were not adequate to cover the franchisee's loan payments or other expenses owed to Brooke. Brooke absorbed the shortfalls and advanced funds to the franchisees to cover them. Brooke raised needed funds through public and private stock offerings, but ultimately filed for bankruptcy relief on October 28, 2008.

The Trustee alleges that Brooke's business model was unsustainable. According to the Trustee, Debtors were continuously insolvent from at least 2003 through their respective bankruptcy filing dates in 2008, but Brooke's improper accounting practices resulted in a false appearance of solvency. It is alleged that contrary to generally accepted accounting principles (GAAP) and SEC guidelines, Brooke recognized the Initial Franchise Fee revenue in the year of receipt from its franchisees, even though

---

the Court will not attempt to make a distinction when the Trustee does not do so.

Brooke had significant continuing obligations to provide franchisor services on an ongoing basis. Such fees were $425,000 in 2003 and rose to $8,795,000 in 2004.

"Kutak was retained as Brooke's legal counsel as early as 2004 to provide broad and wide ranging legal advice regarding issues such as corporate governance, compliance with applicable securities law and regulations, SEC reporting requirements, securitization issues, and other legal issues related to the overall operation of Brooke's business."[11] Specifically, Kutak, as counsel for Brooke, provided legal services relating to three categories of financial transactions: (1) Acting as securities counsel for a 2005 public stock offering; (2) advising Brooke Corporation as to the propriety of the declaration of dividends on 22 occasions from February 18, 2003, through January 25, 2008; and (3) acting as securities counsel for three separate private stock offerings in 2006, 2007, and 2008.

The Trustee alleges that as a result of Kutak's representation of Brooke, including its due diligence review in connection with the 2005 offering and its preparation of Brooke's SEC filings for that transaction, Kutak knew of Brooke's improper recognition of the Initial Franchise Fees[12] and knew or should have known that properly recognizing such revenue would reveal that Brooke was insolvent as early as 2003.[13] But Kutak did

---

[11] Dkt. 67 at ¶ 87.

[12] *Id*. at ¶¶ 161, 162, and 229.

[13] *Id*. at ¶¶ 163 and 229.

6

not advise Brooke of the insolvency or of the impropriety of the 2005 public offering.[14]

The Trustee also alleges that Brooke directors sought Kutak's advice regarding the propriety of declaring dividends and that, although Kutak knew or should have known Brooke was insolvent, Kutak failed to advise Brooke that the dividend payments were unlawful because of Brooke's insolvency.[15]

With respect to the 2006 and 2007 private placements, it is alleged that Kutak acted as transaction counsel, provided legal advice regarding the purchase agreements, and assisted Brooke in preparation of the prospectus and S-1 filings with the SEC.[16]  As to the 2008 private placement, the prospectus provided Kutak would "pass upon certain matters regarding the validity of the shares of common stock being offered."[17]  As to all three offerings, the Trustee alleges that Kutak knew or should have known that Brooke was insolvent but failed to advise Brooke of its insolvency and the impropriety of the transactions.[18]

**THE MOTION TO DISMISS THE LEGAL MALPRACTICE NEGLIGENCE CLAIM (COUNT VI ) IS DENIED.**

**A.  The allegations of the  Complaint.**

The allegations of the legal malpractice claim are as follows:

---

[14] *Id*. at ¶ 230.

[15] *Id*. at ¶¶ 191-194.

[16] *Id*. at ¶¶ 245, 246, and 255.

[17] *Id*. at ¶ 260.

[18] *Id*. at ¶¶ 230, 257, and 263.

7

307. An attorney-client relationship existed between Kutak and Brooke.

308. Pursuant to the attorney-client relationship between Kutak and Brooke, Kutak owed Brooke the duty to exercise ordinary care, skill and knowledge which members of the legal profession ordinarily possess.

309. Kutak's duty to exercise ordinary care, skill and knowledge included the duty to make a reasonable effort to independently verify the facts on which Kutak's legal advice was based, the duty to give advice when necessary to prevent or rectify unlawful or improper acts of Brooke, and the duty to investigate any "red flags" that arose during the course of Kutak's representation of Brooke.

310. For the reasons more fully set forth above, Kutak breached its duty to exercise ordinary care, skill and knowledge during the course of its representation of Brooke by, among other things:

(a) Failing to advise Brooke of the impropriety of Brooke's policies and procedures relating to the recognition of Initial Franchise Fee revenue at the inception of the franchise relationship and Brooke's related SEC disclosures;

(b) Failing to advise Brooke of its insolvency in light of its improper recognition of Initial Franchise Fee revenue;

(c) Failing to investigate Brooke's financial health in connection with the Stock Offerings and related SEC disclosures;

(d) Failing to advise Brooke of the impropriety of the Stock Offerings and related SEC disclosures;

(e) Failing to investigate Brooke's financial health in connection with dividends approved by the Brooke Corp. Board of Directors; and

(f) Failing to advise Brooke and/or the Brooke Corp.

8

Board of Directors that the dividends approved by the Brooke Corp. Board of Directors were unlawful under Kansas law.

311. Kutak's breaches of its duty to exercise ordinary care, skill and knowledge during the course of its representation of Brooke have caused irreparable damage to Brooke, including Brooke's deepening insolvency, and to Brooke's general unsecured creditors in an amount in excess of $10 million.

## B. The parties' positions.

Kutak argues that the Trustee is attempting to expand Kansas law regarding the scope of attorneys' duties — that Kutak had no duty to go beyond its legal knowledge and expertise to investigate Brooke's financial health or independently verify Brooke's certified financial statements. Kutak contends it was not engaged to advise Brooke about its accounting policies, particularly whether its income recognition policy was in accord with GAAP and SEC guidelines. In addition, according to Kutak, the Trustee's allegations that Kutak knew that, contrary to GAAP and SEC guidelines, Brooke was recognizing the Initial Franchise Fee income in the year received lacks plausibility.

The Trustee responds that the extent of lawyers' duties is determined by the scope of the lawyers' undertaking, and it is erroneous to argue that lawyers never have a duty to investigate a client's financial health or accounting practices. The Trustee contends that Kutak's undertakings as described in the Complaint amount to allegations that Kutak essentially served as Brooke's general counsel. He then argues that the Complaint makes specific factual allegations allowing the Court to reasonably infer that Brooke hired Kutak to determine whether the dividends approved by the Brooke Corp. Board of Directors

9

were lawful under Kansas law, to advise it on the propriety of recognizing franchise fee revenue, and to investigate the legal implications of Brooke's financial health in connection with its stock offerings.

### C. The Court holds that the legal malpractice count alleges a claim on which relief can be granted.

Under Kansas law, the "scope of the attorney's duty . . . is commensurate with his or her undertaking."[19]  "The liability of an attorney depends on whether a duty was breached that was reasonably within the scope of the employment."[20]  Thus, the presence or absence of a duty is necessarily dependent upon the facts of the particular case.  For this reason, the cases cited by the parties concerning the presence or absence of duties in other situations are of little assistance to the Court.

After careful review of the Complaint, the briefs, and the oral arguments of counsel, the Court finds it plausible that the duties alleged to have been breached are within the representation alleged to have been undertaken by Kutak.  The Complaint alleges that Kutak "was retained as Brooke's legal counsel as early as 2004 to provide broad and wide ranging legal advice regarding issues such as corporate governance, compliance with applicable securities laws and regulations, SEC reporting requirements, securitization issues, and other legal issues related to the overall operation of Brooke's

---

[19] *Kansas Public Employees Retirement System v. Kutak Rock*, 273 Kan. 481, 495, 44 P.3d 407, 415 (2002).

[20] Ronald E. Mallen and Jeffrey M. Smith, 1 *Legal Malpractice*, § 8.2, text at note 22 (2012 ed.), *available on* Westlaw at LMAL § 8.2.

10

business."[21]  In response to the Motion, based upon the factual allegations of the Complaint, the Trustee presents detailed factual allegations supporting the proposition that Kutak was hired to perform duties in three areas, each of which relates to the obligation to know whether Brooke was solvent.  First, the Trustee shows that he has alleged facts from which the Court can infer that Kutak was hired to "determine whether the dividends approved by the Brooke Board of Directors were lawful under Kansas law."[22]  That law prohibits payment of dividends when a corporation is insolvent.[23] Second, the Trustee shows that the factual allegations of the Complaint are sufficient to allow the Court to conclude that Brooke hired Kutak to "to advise it on the propriety of recognizing franchise fee revenue."[24]  These factual allegations relate primarily to Kutak's preparation of SEC filings with respect to the 2005 offering, including Kutak's preparation of responses to the SEC's specific inquiries regarding recognition of Initial Franchise Fee revenue.  Third, the Trustee shows that the factual allegations of the Complaint are sufficient to allow the Court to conclude that Brooke hired Kutak to "investigate the legal implications of Brooke's financial health in connection with its Stock Offerings."[25]  These factual allegations relate to Kutak's issuance of opinions that

---

[21] Dkt. 67 at ¶ 87.

[22] Dkt. 188 at 4-5.

[23] K.S.A. 17-6420.

[24] Dkt. 188 at 5-6.

[25] *Id*. at 7.

shares issued in the 2005 public offering and the private placements in 2006 and 2008 were legally issued.

In support of its Motion, Kutak characterizes the Trustee's malpractice allegations to be based upon an additional, independent duty to perform accounting work, to advise Brooke on accounting issues, and to investigate the opinion of Brooke's accounting firm, duties which it claims attorneys do not have. But this is a mis-characterization of the Trustee's allegations. The Trustee is not alleging that "Kutak had a duty to 'ferret' through Brooke's financial records and determine whether Brooke was solvent or insolvent."[26] Rather, the Trustee is alleging that as a result of information which Kutak acquired as counsel for Brooke within the scope of representation alleged, Kutak became aware or should have become aware that Brooke improperly recognized the Initial Franchise Fee revenue and was therefore insolvent.[27] For example, the Complaint alleges that as part of its engagement with Brooke, Kutak drafted, edited, and reviewed Brooke's various SEC filings, including the 2004 10-K and the 2005 S-1. Those documents reported that the revenue from the Initial Franchise Fees was recognized immediately. On May 12, 2005, and again on June 24, 2005, the SEC sent Brooke letters about Brooke's 2004 10-K asking for, among other things, an expanded disclosure of Brooke's revenue recognition policies and procedures. Kutak reviewed, edited, and drafted portions of Brooke's responses. As a result, the Trustee alleges that Kutak had actual

---

[26] *Id.* at 4, n. 2.

[27] *Id.*

knowledge the revenue was improperly recognized, that it knew or should have known such improper recognition would result in material misrepresentations of Brooke's financial condition, and that it knew or should have known Brooke was insolvent. And it is alleged that Kutak failed to so advise Brooke.

Some of the arguments raised by Kutak in support of the Motion are more properly considered as defenses to the malpractice claim. At the motion to dismiss stage of the proceedings, the Court cannot determine the extent to which Kutak was entitled to rely upon the work of Brooke's accountants. Likewise, whether the accounting rules concerning revenue recognition are so complex that only accountants, not lawyers, can have a responsibility for determining a mistake had been made cannot be decided based upon the allegations of the Complaint.

The Court finds that the malpractice allegations of the Complaint satisfy the *Iqbal* and *Twombly* standards. Contrary to Kutak's argument, the Court does not find that the Trustee's allegations of the duties breached are merely legal conclusions. The Complaint contains detailed facts concerning the legal services provided by Kutak to Brooke. It satisfies the *Twombly* standard that the Complaint be more than "a formalistic recitation of the elements of a cause of action"[28] and not be comprised of legal conclusions "'couched as . . . factual allegation[s].'"[29] In addition, the Complaint contains more than a statement of facts that merely creates a suspicion of a legally cognizable right; the

---

[28] *Twombly*, 550 U.S. at 555.

[29] *Id*. (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

13

factual allegations are enough to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30]

## THE MOTION TO DISMISS THE CLAIM FOR AIDING AND ABETTING THE BROOKE CORPORATION'S BOARD OF DIRECTORS' BREACHES OF FIDUCIARY DUTY (COUNT VII) IS DENIED.

### A. The allegations of the Complaint.

Count VII alleges that the Brooke Corp. Board of Directors (Board) breached its fiduciary duty to the company by: (1) Improperly approving financial statements that did not properly recognize revenue; (2) failing to ensure that Brooke Corp.'s financial statements reflected the financial condition of the company; (3) failing to ensure that Brooke Corp.'s financial statements complied with GAAP and SEC rules; and (4) declaring and paying dividends that were unlawful. As to Kutak, it is alleged that it knew or should have known of these breaches, that it knew Brooke's recognition of Initial Franchise Fee income at the inception of the franchise relationship was improper, and that it knew or should have known Brooke was insolvent at the time the Board paid dividends multiple times between February 2003 and January 2008. It is alleged that despite such knowledge, "Kutak knowingly and substantially assisted the Brooke Corp. Board of Directors in continuing the practice of recognizing Initial Franchise Fee revenue at the inception of the franchise relationship and knowingly and substantially assisted the Brooke Corp. Board of Directors in declaring and paying dividends that were unlawful

---

[30] *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949.

14

under Kansas law."[31]

## B. Positions of the Parties.

When moving to dismiss the aiding and abetting claim, Kutak argues that the claim fails for the same reason as the legal malpractice claim — because "Kutak had no duty with respect to Brooke's financial statements, which form the basis of the alleged breach of fiduciary duty."[32]

The Trustee responds that the Complaint makes sufficient factual allegations which, when taken as true, allow the Court to reasonably infer that Kutak knew or should have known about the Board's breaches, and that Kutak substantially assisted the Board's commission of these breaches, by, among other things, drafting portions of the inaccurate and misleading financial statements and failing to put an end to the breaches by advising Brooke Corp. of the Board's malfeasance.[33]

## C. Analysis.

"[A]iding and abetting is a theory used to impose vicarious liability for concerted action."[34]  Under the doctrine, a person is liable to a third person for harm from the tortious conduct of another if the person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to

---

[31] Dkt. 75 at ¶ 319.

[32] Dkt. 179 at 15.

[33] Dkt. 188 at 12.

[34] *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 936, 811 P.2d 1220, 1231 (1991).

15

conduct himself." [35]   Six factors are considered when deciding if substantial assistance was provided:  The nature of the act encouraged; the amount of assistance given by the defendant; the defendant's presence or absence at the time of the tort; his relation to the other; his state of mind; and the duration of the assistance provided. [36]   In this case, if the Board breached its fiduciary duty to the company and Kutak aided and abetted that breach, Kutak would be vicariously liable for damage caused by the Board.

When ruling on Kutak's Motion to dismiss this claim, the question is whether the Complaint contains enough allegations of fact to state a claim for relief that is plausible on its face.  Kutak correctly points out that the factual allegations on which the Trustee relies to state the aiding and abetting claim are substantially the same as those which are alleged in support of the negligence claim.  The Court has found the allegations sufficient to withstand the motion to dismiss the negligence claim.

Likewise, the Court finds the allegations sufficient to defeat dismissal of the aiding and abetting claim.  The claim of breach of fiduciary duty by the Board is plausible. Detailed factual allegations support the allegation that Brooke Corp. was insolvent when dividends were paid, in violation of Kansas law.  Likewise, the factual allegations convince the Court it is plausible that Kutak knowingly gave substantial assistance to the Board.  The Trustee alleges that Kutak over several years advised the Board the dividends were lawful.  He also alleges that Kutak was significantly involved in responding to SEC

---

[35] *Id*. (*quoting* Restatement (Second) of Torts, § 876 (1977)).

[36] *Id*., 248 Kan. at 937, 811 P.2d at 1232.

16

inquiries regarding Brooke Corp.'s income recognition policies, making it plausible that Kutak knew the policies were not in accord with GAAP and SEC guidelines, and knew or should have known the improper accounting policies made Brooke appear solvent when it was not. The Complaint contains more than a statement of facts that merely creates a suspicion of a legally cognizable right; the factual allegations are enough to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]

## THE MOTION TO DISMISS THE BREACH OF FIDUCIARY DUTY (COUNT VIII) IS GRANTED.

### A.  The allegations of the Complaint.

The fiduciary duty claim is based upon the same facts as the malpractice claim. The Complaint alleges that based upon the attorney client relationship, Kutak owed a fiduciary duty to Brooke, and that the fiduciary duty included the duty to exercise the highest degree of fidelity and good faith, and to properly, competently, and adequately counsel, advise, and represent Brooke.[38]  It is alleged that the fiduciary duties also included the duty to exercise ordinary care, skill and knowledge; the duty to make an effort to independently verify facts on which Kutak's legal advice was based; and the duty to give advice when necessary to prevent or rectify unlawful and improper acts of

---

[37] *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949.

[38] Dkt. 67 at ¶ 324.

17

Brooke.[39]

The specific allegations of breach of fiduciary duty are in paragraph 326 of the

Complaint and allege that Kutak breached its fiduciary duty by:

> (a) Failing to advise Brooke of the impropriety of Brooke's policies
> and procedures relating to the recognition of Initial Franchise Fee
> revenue at the inception of the franchise relationship and Brooke's
> related SEC disclosures;
>
> (b) Failing to advise Brooke of its insolvency in light of its improper
> recognition of Initial Franchise Fee revenue;
>
> (c) Failing to investigate Brooke's financial health in connection
> with the Stock Offerings and related SEC disclosures;
>
> (d) Failing to investigate and to advise Brooke of the impropriety of
> the Stock Offerings and related SEC disclosures;
>
> (e) Failing to investigate Brooke Corp.'s financial health in
> connection with dividends approved by the Brooke Corp. Board of
> Directors; and
>
> (f) Failing to advise Brooke Corp. and/or the Brooke Corp. Board of
> Directors that the dividends approved by the Brooke Corp. Board of
> Directors were unlawful under Kansas law.

### B.  Positions of the Parties.

Kutak argues that the claim for breach of fiduciary duty rests upon the same

allegations as are the basis for the legal malpractice claim and both claims fail for the

same reasons.[40]  The Trustee's response combines his arguments in opposition to the

---

[39] *Id*. at ¶ 325.

[40] Kutak combines its arguments on the breach of fiduciary duty with its arguments on the count
alleging aiding and abetting breach of fiduciary duty by the Board.  This is a curious combination, since

motion to dismiss the breach of fiduciary duty claim with his arguments on the negligence claim, making no distinction between the two claims.

At the close of oral argument on the Motion, the Trustee was given an opportunity to file an additional brief in support of his claim for breach of fiduciary duty. He did so. In his supplemental brief, the Trustee argues that a breach of fiduciary duty was alleged in paragraphs 324-326 (described or quoted above) and in paragraphs 187-195 of the Complaint. The latter paragraphs concern the allegedly illegal payment of dividends and read as follows:

> 187. Between February 2003 and January 2008, Brooke Corp.'s Board of Directors declared and paid numerous cash dividends on the Company's common stock:
>
> [details of individual declarations omitted]
>
> 188. As of December 31, 2006, Robert Orr represented in SEC filings that he beneficially owned approximately 46.6% of Brooke Corp.'s outstanding common stock. As of December 31, 2006, there were 12,553,726 outstanding shares of Brooke Corp. common stock. Accordingly, when Brooke Corp.'s Board of Directors, of which Robert Orr was the chairman, declared a[n] $.18/share quarterly dividend, which it did for the last three quarters of 2006 and each quarter in 2007, Robert Orr stood to share in approximately $1.053M for each dividend payment.
>
> 189. At the time of each dividend payment, Brooke was insolvent and the Brooke Corp. Board of Directors either knew, or through the exercise of reasonable diligence, should have known, that Brooke was insolvent.

---

the claims are very distinct — breach of fiduciary duty is direct liability, whereas aiding and abetting is a theory of vicarious liability.

Case 10-06246    Doc# 239    Filed 03/21/12    Page 19 of 25

190.  As early as August 2006 and as late as March 2008, Kutak provided legal advice to Brooke and the Brooke Corp. Board of Directors regarding the legality and advisability of declaring dividends under Kansas law.

191.  On several occasions, prior to declaring a dividend, Brooke and the Brooke Corp. Board of Directors sought Kutak's advice regarding the propriety of declaring and paying a dividend.

192.  In providing such legal advice, Kutak recognized that Brooke's financial condition was paramount to a determination of whether dividends were proper under Kansas law.

193.  Based on its knowledge that Brooke was improperly recognizing 100% of Initial Franchise Fee revenue in the year that revenue[s] were received, Kutak knew or should have known that Brooke was insolvent at the time the Brooke Corp. Board of Directors declared and paid the above-referenced dividends.

194.  Kutak failed to advise Brooke or the Brooke Corp. Board of Directors that payment of the above-referenced dividends was unlawful under Kansas law in light of Brooke's insolvency.

195.  Kutak's failure to properly advise Brooke and the Brooke Corp. Board of Directors regarding the payment of dividends resulted in the payment of dividends that were unlawful under Kansas law.[41]

According to the Trustee, these allegations show a breach of Kutak's fiduciary duty by alleging that "Kutak placed the personal interest of Robert Orr, who was the chairman of the Brooke board of directors, above the interests of its client by failing to inform Brooke

---

[41] Dkt. 67 at ¶¶ 187-195.

20

that Mr. Orr was personally receiving millions of dollars in improperly declared dividends."[42]  Kutak responds that no allegations of breach of fiduciary duty are included in the Complaint.

### C. Analysis.

The elements of a claim for breach of fiduciary duty are:  (1) The existence of a fiduciary relationship; (2) a duty based on the fiduciary relationship; and (3) breach of the duty.  Generally, attorneys owe both fiduciary and competency duties to their clients.  Claims for breaches of the two duties arise from violations of distinct standards.  A law review article states:

> A much different type of misconduct distinguishes the tort action of malpractice from the tort action for breach of fiduciary duty.  The malpractice action sanctions negligent performance.  The essence of an action for malpractice is violation of a standard of care.  A breach of fiduciary duty, however[,] involves violation of a standard of conduct, not a standard of care.  As a fiduciary, an attorney has a duty "to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation of the client."[43]

A leading treatise on legal malpractice states:

> An analytical approach recognizes that an attorney's duties to a client include two obligations:  (1) competent representation and (2) compliance with the fiduciary obligations.  The fiduciary obligations set a standard of

---

[42] Dkt. 233 at 4.

[43] Ray Ryden Anderson & Walter W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle*, 47 SMU L. Rev. 235, 249 (1994) (*quoting* Mallen & Smith, *Legal Malpractice*, § 11.1 at 631 (3d ed. 1989)).

"conduct," analogous to the standard of "care," which pertains to the requisite skill, knowledge and diligence. Thus, the standard of care concerns negligence and the standard of conduct concerns a breach of loyalty or confidentiality. This approach uses the model for negligence, substituting the particular fiduciary obligations for the duty of care.[44]

"When a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative."[45]

The allegations of the Complaint fail to state a claim against Kutak for breach of fiduciary duty on which relief can be granted. The Trustee fails to allege that Kutak breached any standard of conduct relating to an attorney's duties of loyalty and confidentiality. A comparison of the Trustee's factual allegations in support of the breach of fiduciary duty claim with the factual allegations supporting the malpractice claims reveals no significant difference. The factual allegations concerning illegal dividends do not allege that the independence of Kutak's judgment was affected either by its own interests or the interests of another client, present or former. The duty of competency, not

---

[44] 2 Mallen & Smith, *Legal Malpractice* at §15:2, text at notes 10-11. A duty to disclose has been identified as part of the fiduciary duty. *Milbank v. Holmes (In re TOCFHBI, Inc.)*, 413 B.R. 523, 532 (Bankr. N.D. Tex. 2009); *see also* Anderson & Steele, *Legal Malpractice Puzzle*, 47 SMU L. Rev. at 239 (*discussing Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (though attorney's nondisclosure not shown to have harmed client, attorney forfeited right to compensation)). But this duty relates to disclosure of the attorney's conduct which may impact the representation, such as conflicts of interest, rather than disclosure of information relating to the attorney's representation of the client, such as Brooke's improper accounting method.

[45] *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 791, 767 N.E.2d 470, 476 (2002); *see* Mallen & Smith, *Legal Malpractice* at § 15:2, text at note 16 ("Allegations that constitute negligence, which do not implicate a duty of confidentiality or loyalty, do not support a cause of action for fiduciary breach").

the duty of loyalty, is implicated when an attorney permits the personal interests of one board member, who is not a client and has not been a client, to predominate.

The fiduciary duty claim as alleged is duplicative of the malpractice claim. The Motion to dismiss the breach of fiduciary duty claim is granted.[46]

## THE MOTION TO DISMISS THE DEEPENING INSOLVENCY CLAIM (COUNT IX) IS GRANTED.

In Count IX, the Trustee alleges a cause of action for deepening insolvency against Kutak, asserting that the conduct which is the basis for the other common law claims also resulted in the unlawful prolongation of Brooke's corporate life, causing the loss of the value of Brooke. This is the same cause of action the Trustee alleged against the underwriters, co-defendants in this case. In the Memorandum Opinion and Order Finding the Complaint Fails to State Claims on Which Relief Can Be Granted Against Underwriters,[47] filed on February 2, 2012, the Court held that deepening insolvency is not a cause of action recognized under Kansas law. At oral argument, the parties did not challenge that ruling or argue that it would not apply to the deepening insolvency claim against Kutak. For the reasons stated in the February 2, 2012, Memorandum Opinion and Order, the Court therefore holds that Count IX, deepening insolvency, fails to state a claim on which relief can be granted against Kutak.

## THE DOCTRINE OF *IN PARI DELICTO* DOES NOT BAR THE TRUSTEE'S

---

[46] The Trustee's supplemental brief does not request leave to file an amended complaint, and no such permission is granted.

[47] Dkt. 223.

## STATE LAW CLAIMS.

According to Kutak, the doctrine of *in pari delicto* prevents lawsuits where the plaintiff participated in the same wrongdoing as the defendant. And, according to Kutak, because the bankruptcy trustee stands in the shoes of the Debtor corporations, the Trustee's claims are barred because the allegations of the Complaint evidence that "the Trustee believes the Brooke Board of Directors and Kutak are at least equally responsible for Brooke's financial predicament."[48]

The co-defendant underwriters raised the same issue when moving to dismiss the Trustee's claims against them. In the Memorandum Opinion and Order Finding the Complaint Fails to State Claims on Which Relief Can Be Granted Against Underwriters,[49] filed on February 2, 2012, the Court rejected the defense as a basis to dismiss the negligence claim. It stated, "Kansas has recognized the principle of *in pari delicto*, which requires a weighing of the wrongful act of each party. . . . [But t]here is no doubt that *in pari delicto* does not bar a negligence claim against Underwriters. Under Kansas negligence law, comparative fault, not *in pari delicto*, addresses the issue of liability when the plaintiff as well as the defendant or defendants are alleged to be at fault."[50] At oral argument, Kutak's counsel acknowledged that the Court's reasoning when ruling on the underwriters' motion to dismiss is equally applicable to the state law claims alleged

---

[48] Dkt. 179 at 20-21.

[49] Dkt. 223.

[50] *Id*. at 36-37.

against it.

The defense of *in pari delicto* does not bar the Trustee's state law claims.

**CONCLUSION.**

For the foregoing reasons, the Court grants Kutak's Motion to dismiss as to Count VIII (breach of fiduciary duty) and Count IX (deepening insolvency). The Court also holds that the doctrine of *in pari delicto* is not a basis to dismiss the state law claims against Kutak. The claims alleged in the Complaint against Kutak for negligence (Count VI) and aiding and abetting the breach of fiduciary duty by the Board (Count VII) are facially plausible and shall not be dismissed.

**IT IS SO ORDERED.**

**# # #**